UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20723-Cv-HUCK
        (05-20437-Cr-HUCK)
MAGISTRATE JUDGE P. A. WHITE

IRAMM WRIGHT,                        :

        Movant,                      :

v.                                   :          REPORT OF
                                            MAGISTRATE JUDGE
UNITED STATES OF AMERICA,            :

        Respondent.                  :

_____

Introduction

This matter is before this Court on the movant's timely filed
motion to vacate pursuant to 28 U.S.C. §2255, attacking his
conviction and sentence, entered following a jury verdict in case
no. 05-Cr-20437-Huck.

The Court has reviewed the motion (Cv-DE#1), the memorandum of
law (Cv-DE#6), the government's answer (Cv-DE#9), the movant's
reply thereto (Cv-DE#13), the Pre-sentence Investigation Report
(PSI), and all pertinent portions of the underlying criminal file.

Claims

Construing the movant's arguments liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the
movant appears to raise the following claims in his §2255 motion:

1. The movant was denied effective assistance of
counsel when his attorney advised him to proceed to trial
on an entrapment defense rather than plead guilty. (Cv-
DE#1:4;Cv-DE#6:1).

2.   The movant was denied effective assistance of counsel when his attorney deprived him of his sixth amendment right to testify on his own behalf despite requesting to do so. (Cv-DE#1:5;Cv-DE#6:3).

3.   The movant was denied effective assistance of counsel when his attorney failed to move for severance of defendants' trial due to the prejudicial conflict of various defenses. (Cv-DE#1:6;Cv-DE#6:4).

4.   The movant was denied effective assistance of counsel when his attorney failed to move for a sanction or a remedy after the government's willful violation of the sequestration rule. (Cv-DE#1:9;Cv-DE#6:5).

5.   The movant was denied effective assistance of counsel when his attorney failed to move for sanction or remedy after the government's knowing and willful Jencks Act violation. (Cv-DE#1:10;Cv-DE#6:6).

6.   The movant was denied effective assistance of counsel when his attorney failed to move for judgment of acquittal when the government failed to prove a narcotic nexus with interstate commerce proven. (Cv-DE#1:11;Cv-DE#6:7).

7.   The movant was denied effective assistance of counsel when his attorney failed to object to the imposition of a mandatory consecutive sentence of five years based on the "except" clause pursuant to 18 U.S.C. §924(c)(1)(A). (Cv-DE#1:12;Cv-DE#6:11).

2

8. The movant's three level aggravating role enhancement for leadership should be vacated following the Eleventh Circuit's reversal of co-defendants Reed and Forest's convictions. (Cv-DE#1:14;Cv-DE#6:12).

### Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged by way of indictment with conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. §1951 (Count One); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §846 (Count Two); attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841, all in violation of 21 U.S.C. §846 and 18 U.S.C. §2 (Count Three); possession of a firearm during a crime of violence or drug trafficking crime, in violation of 18 U.S.C. §1951(a) and 21 U.S.C. §846 as set forth in Counts One, Two and Three, all in violation of 18 U.S.C. §§924(c)(1)(A) and 2 (Count Four); felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 924(e) (Count Five). (Cr-DE#13).

On August 1, 2005, along with his co-defendants, the movant proceeded to a joint jury trial. (Cr-DE#83). Thereafter, on August 5, 2005, the jury returned a verdict finding the movant guilty as charged. (Cr-DE#95).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined the movant's base offense level was 34. (PSI¶¶21-24). However, because the movant was determined to be an organizer, leader, manager or supervisor of the criminal activity, the offense level was increased by two levels, which resulted in an adjusted offense level of 36. (PSI¶¶27,29).

3

Notwithstanding, the movant's offense level is of no import since, pursuant to U.S.S.G. §§4B1.1(a) and 4B1.4(a), the movant was classified as a career offender and an armed career offender. (PSI¶30). Thus, his total base offense level was set at 37. (PSI¶¶30,32).

It was further determined the movant had a total of six criminal history points and a criminal history category of III. (PSI¶40). However, because the movant was classified as a career offender, his criminal history category in every case shall be VI. (Id.). Based on a total offense level of 37 and a criminal history category of VI, the guideline imprisonment range was 360 months to life. (PSI¶75). Moreover, as to Count Four, a mandatory consecutive term of 60 months was required by statute. (Id.).

On November 5, 2005, the movant was sentenced to 420 months imprisonment, consisting of 240 months as to Count One and 360 months as to Counts Two, Three and Five, all to be served concurrently and 60 months as to Count Four, to be served consecutively to Counts One, Two, Three and Five; followed by a total of five years of supervised release and a special assessment of $500.00. (Cr-DE#128). The Clerk entered judgment on November 8, 2005. (Id.). Thereafter, on January 18, 2006, movant's counsel filed a motion to re-sentence the movant in order to re-file the misplaced notice of appeal. (Cr-DE#163). The District Court, on January 20, 2006, entered an order denying the motion to re-sentence, however, vacated the judgment entered on November 7, 2005 and issued a separate judgment to allow the movant to re-file the misplaced notice of appeal. (Cr-DE#164). Accordingly, per court order, the original judgment was vacated and a new judgment, imposing the same sentence, was entered on January 24, 2006. (Cr-DE#165). That same day, a notice of appeal was filed. (Cr-DE#180). Thereafter on December 19, 2007, the Eleventh Circuit, per curiam,

4

affirmed the movant's convictions. (Cr-DE#205). It appears the movant did not petition for writ of certiorari. For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final at the latest on March 19, 2008, when time expired for filing a petition for writ of certiorari, ninety days following affirmance of the movant's sentence and conviction on direct appeal.[1] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than March 19, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). The movant timely filed his §2255 motion on March 16, 2009. (Cv-DE#1).

Discussions of Claims

First, it should be noted that the foregoing claims, with the exception of **claim six**, could have been, but were not raised on direct appeal. Notwithstanding, construing the argument made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Thus, the claims will be identified and treated in turn in this Report, infra.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness;

---

[1] The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id.</u> at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001).

Moreover, review of counsel's conduct is to be highly deferential <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim one**, the movant asserts he was denied effective assistance of counsel when his attorney advised him to proceed to trial on an entrapment defense rather than plead guilty. (Cv-DE#1:4;Cv-DE#6:1).

First, the government did not proffer and there is no evidence that a plea was extended to the movant, accordingly the movant fails to establish that he received ineffective assistance of counsel or any prejudicial results.

To the extent the movant argues that counsel misadvised him

regarding the option of entering a guilty plea and was therefore prejudiced when he failed to receive a three level reduction for acceptance of responsibility, this claim is without merit.

It is well-settled that a defendant has no absolute right under the United States Constitution or under Fed.R.Crim.P. 11 to have his guilty plea accepted by the court. Santobello v. New York, 404 U.S. 257, 262 (1971); North Carolina v. Alford, 400 U.S. 25, 38 n. 11 (1970). When a defendant attempts to couple a guilty plea with an assertion of facts that would negate his guilt, a judge may properly treat this assertion as a protestation of innocence. United States v. Gomez-Gomez, 822 F.2d 1008, 1011 (11th Cir. 1987). Although the judge may enter judgment upon a guilty plea, he is not required to do so. Gomez, supra, citing, North Carolina v. Alford, 400 U.S. 25, 38 nn. 10 (1970). In Gomez, the Eleventh Circuit concluded that when a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against acceptance of the plea.

In this collateral proceeding, the movant has failed to establish that even if he had been advised that he could enter into a guilty plea, that such a plea would have been accepted by the court. In fact, the government indicated and as the record reflects, that even at sentencing, the movant maintained his innocence, by arguing that he was entrapped. (Cr-DE#174:5). In light of the movant's entrapment theory at sentencing and the assertions made with respect to this claim, the allegations of misadvise by counsel are highly suspect and incredible.

Moreover, as is evident from the record, defense counsel rested his case without proffering any evidence or requesting an

7

entrapment defense, which consequently was not included in the court's adoption of jury instructions. (Cr-DE#172:77-83,146-166). Accordingly, it is difficult to believe that the movant was convinced not to enter into a guilty plea in hopes of pursuing an entrapment defense at trial. Thus, under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim. Therefore, he is entitled to no relief.

In **claim two**, the movant asserts he was denied effective assistance of counsel when his attorney deprived him of his sixth amendment right to testify on his own behalf despite requesting to do so. (Cv-DE#1:5;Cv-DE#6:3). According to the movant, had he taken the stand, he would have testified that the informant coerced him into participating in the fake robbery of the agent although he sought to withdraw from the conspiracy. (Cv-DE#6:3). Particularly, he would have testified that "after receiving information from friends about known improprieties of the informant, [the movant] advised the informant that he wanted no part in the fake robbery of the agent. The informant, however, admonished [the movant] that he had been paid for introducing [him] and the agent, and that if [he] backed out now there would be problems for [him] and [his] family." (Id.:4).

Even if the movant testified as indicated and made a blanket assertion of innocence, or attempted to negate his involvement in the offenses, there is no reasonable probability that his testimony would have resulted in an acquittal. It is true that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). This right is personal to the defendant, and

cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir. 1997). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11th Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

However, not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant evidentiary hearing. Underwood v. Clark, 939 F.2d 473 at 476 (7th Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); Passos-Paternina v. United States, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under Strickland, supra, because "his testimony at trial only helped his case..." Sexton v. French, 163 F.3d 874, 883 (4th Cir. 1998), cert. denied, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further

inquiry, such as the grant of a hearing.[2] See, e.g. Brown, 124 F.3d at 80.  However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim.   See Teague, supra.

    Given the sufficiency of the evidence adduced at trial implicating the movant in the offenses, even if the movant had testified as proffered, no showing has been made in this collateral proceeding that his testimony would have resulted in an acquittal. Moreover, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance and is entitled to no relief on this claim. Strickland v. Washington, supra. Likewise, the movant's claim that counsel failed and/or refused to allow him to testify on his own behalf is self-serving and not supported by any affidavit from counsel.[3] Counsel could have well believed that the movant's version of the events was not credible or too suspect to put the movant on the stand, and would subject the movant to detrimental cross-examination regarding his prior convictions and his post-arrest statements. Such a strategic decision should not be

---

    [2]In Gallego v. United States, 174 F.3d (11th Cir. 1999) the Court rejects a "per se credit counsel in case of counsel rule," with regard to credibility findings in evidentiary hearings, but does not address the issue of when a hearing is actually required.

    [3]See, e.g., White v. United States, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'", quoting, United States v. Castillo, 14 F.3d 802, 805 (2d Cir.), cert. den'd, 513 U.S. 829 (1994); see also, e.g., Jeffries v. United States, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not shown that counsel's performance was deficient as he merely made conclusory, self-serving allegations that his attorney refused to let him take the stand."); Torres v. Stinson, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under Strickland.").

second-guessed here. See McNeal v. Wainwright, 722 F.2d 674 (11th Cir., 1984); United States v. Costa, 691 F.2d 1358 (11th Cir. 1982). Under these circumstances, no deficient performance or prejudice has been established arising from counsel's misadvise or refusal to allow the movant to testify on his own behalf.

In **claim three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to motion for severance of defendants' trial due to the prejudicial conflict of various defenses. (Cv-DE#1:6;Cv-DE#6:4).

The general rule is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases. United States v. Brown, 505 F.3d 1229, 1268, (11th Cir. 2007), citing, Zafiro v. United States, 506 U.S. 534, 537-38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984)("To repeat the familiar, persons indicted together ordinarily should be tried together."); United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); see also United States v. Beale, 921 F.2d 1412, 1428 (11th Cir. 1991)("The general rule is that defendants charged with a common conspiracy should be tried together.").

When defendants have been properly joined for trial, severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. Zafiro v. United States, 506 U.S. 534, 539 (1993); United States v. Blankenship, 382 F.3d 1110, 1122 (11th Cir. 2004). The Court recognizes that serious risk to the integrity

11

of a joint trial can occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant. Zafiro, supra. Although severance may be warranted in some cases, courts have held that less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. Id., citing Richardson v. Marsh, 481 U.S. 200 (1987).

The movant has failed to identify a specific trial right that was compromised by the joint trial nor has he shown that the jury was unable to make an individualized determination about his guilt or innocence. Moreover, to the extent the movant argues that due to the joint trial he was prejudiced because of conflicting defenses, this claim is without merit as none of the defendants presented a defense. Thus, no showing has been made that even had counsel argued as a basis for severance the reasons set forth herein, that the court would have granted a hearing which would have resulted in severance.

In **claim four**, the movant asserts he was denied effective assistance of counsel when his attorney failed to motion the court for a sanction or a remedy after the government's willful violation of the sequestration rule. (Cv-DE#1:9;Cv-DE#6:5). Specifically, he argues that the government and its witness, Mike Leon, intentionally violated the sequestration rule after the judge instructed both the government and the witness not to discuss the case during recess. (Cv-DE#1:9). He further argues that after his attorney observed a violation thereof, counsel, although he brought the matter to the court's attention, nevertheless failed to move for sanctions or a remedy. (Id.). Notwithstanding, this claim is without merit as the movant fails to show demonstrate prejudice as a result thereof.

"A federal trial judge has broad power to sequester nonparty witnesses before, during, and after their testimony to restrain them from tailoring their testimony, to aid in detecting less-than-candid testimony and, in case of recess called before testimony is completed, to prevent improper attempt to influence testimony in light of testimony already given." Geders v. United States, 425 U.S. 80, 87 (1976). When the sequestration rule is violated, the court may: (1) cite the guilty party for contempt; (2) allow opposing counsel to cross-examine the witness as to the nature of the violation; or (3) where the rule is violated intentionally by either counsel or the witness, the witness' testimony may be stricken or preclude further testimony. United States v. Diaz, 248 F.3d 1065, 1104 (11th Cir. 2001).

At trial, prior to the court taking its morning recess, the movant's counsel requested the court to instruct the witness, which the court did, reminding the witness that he was still on the stand and not to discuss his testimony. (Cr-DE#170:56). However, upon returning from recess, defense counsel informed the court that the government and the witness, during the break, discussed the case. (Id.:57). The government admitted that it discussed the testimony with the witness, however, their discussion was limited to a topic that was not going to be addressed on direct examination; to wit, "the setting of the sun." (Id.). Again, the court reminded the government that once a witness takes the stand, the witness is not to discuss his testimony. (Id.). No further action was taken and the witness' examination continued. (Id.). Defense counsel had the opportunity, and did in fact, cross-examine the witness.

In order to justify reversal for violation of the sequestration rule, the defendant must show sufficient prejudice. United States v. Womack, 654 F.2d 1034 (5th Cir. 1981).

Consequently, despite his protestations, the movant fails to demonstrate how he was prejudiced as a result of his attorney failing to move the court for a sanction or a remedy, especially in light that his conviction was based mainly on the UC's testimony and his own recorded statements. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim.

In **claim five**, the movant asserts he was denied effective assistance of counsel when his attorney failed to motion the court for a sanction or a remedy after the government's knowing and willful Jencks Act violation. (Cv-DE#1:10;Cv-DE#6:6). Moreover, the movant argues that such action also violated the <u>Brady</u> rule and Federal Rule of Criminal Procedure 26.2. (<u>Id.</u>).

The Jencks Act requires the government to produce, on motion by the defendant, any statement of a government witness, in the government's possession, which relates to the subject matter of the witness's testimony. 18 U.S.C. §3500. However, as the trial record clearly reflects, the detective's rough notes were not in the government's possession since they were discarded upon completion of the detective's report, pursuant to Metro Dade policy. (Cr-DE#170:128-129). The Eleventh Circuit has held that "[n]o decision of this circuit or the former Fifth Circuit indicates that either rough notes or the rough draft of a report prepared by a government agent become Jencks Act material merely because the agent uses them to prepare his final report. Indeed, the case law is directly contrary to such a proposition." <u>United States v. Soto</u>, 711 F.2d 1558 (11th Cir. 1983) <u>citing</u> <u>United States v. Martin</u>, 565 F.2d 362 (5th Cir. 1978); <u>United States v. Pacheco</u>, 489 F.2d 554, 566 (5th Cir. 1974) ("'Nothing in the Jencks Act requires that notes made in the course of an investigation be preserved after the notes have

14

served their purpose of assisting in the preparation of interview reports.'"), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed. 774 (1975). Accordingly, there was no Jencks Act violation.

To the extent the movant argues that the detective's actions resulted in a <u>Brady</u> violation, this claim is also without merit. In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a <u>Brady</u> violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11th Cir. 1986). This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness. <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11th Cir. 1987), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. <u>United States v. Alzate</u>, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). On the evidence before this court, no showing has been made that the government suppressed evidence, nor that the evidence was exculpatory. Thus, the movant cannot prevail on this claim, as no prejudice has been established arising from counsel's failure to pursue this claim.

Moreover, to the extent he argues that Fed.R.Crim.P. 26.2 was

violated, this claim is without merit. In pertinent part, the rule reads:

> (a) Motion to Produce. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness *that is in their possession* and that relates to the subject matter of the witness's testimony.

Fed.R.Crim.P. 26.2 (emphasis added). As the rule unequivocally states, the witness is only required to produce a statement that is in their possession. As discussed above and is evident in the trial transcripts, the witness stated that he no longer possessed the rough notes. Accordingly, he did not violate the rule.

Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim.

In **claim six**, the movant asserts he was denied effective assistance of counsel when his attorney failed to motion for judgment of acquittal when the government failed to prove a narcotic nexus with interstate commerce proven. (Cv-DE#1:11;Cv-DE#6:7). It appears the movant argues that because the cocaine in reality did not exist, it is impossible for it to have affected interstate commerce, thus resulting in the government's failure to prove his conduct. (Cv-DE#1:11;Cv-DE#6:7). Accordingly, the movant claims he is actually innocent of this charge. (Cv-DE#1:10).

In Count One of the indictment, the movant was charged and found guilty of conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. §1951(a); namely, the Hobbs

16

Act. "The Hobbs Act prohibits robbery or extortion, and attempts or conspiracies to commit robbery or extortion, that 'in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce.'" United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2007), citing United States. Kaplan, 171 F.3d 1351, 1354, (11th Cir.)(quoting 18 U.S.C. §1951(a)), *cert. denied*, 528 U.S. 928, 120 S.Ct. 323, 145, L.Ed.2d 252 (1999). A Hobbs Act conspiracy, pursuant to 18 U.S.C. §§1951(a) & (b)(1), is proven when the government establishes that: "(1) two or more persons agreed to commit a robbery or extortion encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal. Diaz, 248 F.3d at 1084; citing United States v. To, 144 F.3d 737, 747-48 (11th Cir. 1998); United States v. Thomas, 8 F.3d 1552, 1556 (11th Cir. 1993).

First, defense counsel did in fact challenge the sufficiency of the evidence the government presented when counsel moved for an acquittal as to Counts One through Five pursuant to Rule 29 at the conclusion of the government's case during trial. (Cr-DE#172:68-69). Specifically, as to Count One, counsel argued that there was no evidence that there was a conspiracy with the intent to commit the criminal act of robbery. (Id.). Moreover, counsel argued that no evidence was presented that the plan discussed between the movant, the confidential informant and the undercover officer was a plan intended to be a crime of violence and that property was going to be taken. (Id.). Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim.

To the extent the movant argues that the Government failed to prove that a Hobbs Act violation occurred, that he is actually

innocent of the offenses and that he cannot be found guilty when the cocaine really did not exist, these claims are also without merit. An issue resolved against a movant on direct appeal cannot be relitigated in a §2255 motion. <u>United States v. Frady</u>, 456 U.S. 152, 166-168 (1982); <u>Dermota v. United States</u>, 895 F.2d 1324 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 837 (1990); <u>United States v. Johnson</u>, 615 F.2d 1125, 1128 (5th Cir. 1980); <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986). Only if there has been an intervening change in the law can an issue decided on direct appeal be relitigated in a motion to vacate. <u>See generally</u>: <u>Davis v. United States</u>, 417 U.S. 333 (1974). The movant has shown no change of circumstances.

The substantive issue that the government failed to prove that the movant violated the Hobbs Act was raised and rejected on direct appeal. In rejecting the claim, the Court of Appeals found as follows:

*1. Sufficiency of the Evidence as to Wright*

First, Wright argues that there was insufficient evidence to convict him of a Hobbs Act to rob because the entire scheme was fictional and neither the drugs nor the drug courier actually existed. This argument fails; "'[t]he fact that the intended victims and narcotics were fictional is irrelevant.'" <u>United States v. Taylor</u>, 480 F.3d 1025, 1027 (11th Cir. 2007)(affirming the Hobbs Act conviction of a defendant who 'conspired to violently rob the stash house of a narcotics organization').'"

Second, Wright argues that there was insufficient evidence that a taking against one's will, which is an element of a Hobbs Act robbery charge, was actually planned. Wright alleges that a taking against one's will was not planned since Espinosa was in on the scheme and the drugs were to be taken from Espinosa. However, the record clearly reveals numerous pieces of evidence from which a reasonable juror could conclude that a non-consensual taking was planned. These pieces of evidence

include: (1) a videotaped meeting between Wright and
Espinosa indicating that the plan was to rob the stash
house, not the courier; (2) Espinosa advising Wright that
he would need to have assistance since the stash house
was protected by armed guards; (3) Wright stating that he
would make it 'look as if they were on the house or they
were on another courier and they just happened to hit it
while [Espinosa] was inside;' and (4) Wright and his co-
conspirators arriving at the house with three guns.

Since there was sufficient evidence that a non-consensual
taking was planned and the fact that the drugs and drug
courier were fictional is irrelevant, there was
sufficient evidence to convict Wright of a Hobbs Act
conspiracy to rob.

(Cr-DE#205).


Presentation of these claims in this §2255 proceeding adds
nothing of substance which would justify a different result. The
claim is procedurally barred. See United States v. Nyhuis, 211
F.3d 1340 (11th Cir. 2000)(Defendant was not entitled to collateral
relief based on due process claim that was mere recharacterization
of double jeopardy and immunity claim that was rejected on direct
appeal), citing, United States v. Rowan, 663 F.2d 1034, 1035 (11th
Cir. 1981). A rejected claim does not merit rehearing on a
different, but previously available legal theory. United States v.
Nyhuis, 211 F.3d at 1343, citing, Cook v. Lockhart, 878 F.2d 220,
222 (8th Cir. 1989). Consequently, the movant is entitled to no
relief.


To the extent the movant argues that the government failed to
present any evidence that the cocaine, if stolen, would interfere
with interstate commerce, this claim is also without merit. It
appears the movant's argument stems from his belief that if there
was no evidence presented that the drugs traveled through
interstate commerce, then the respective count should have been

dismissed. (Cv-DE#6:8). "Because the Hobbs Act . . . encompasses the inchoate offenses of attempt and conspiracy, the interstate nexus required to prove a Hobbs Act conspiracy may be established upon evidence that *had* the conspiratorial objective been accomplished, interstate commerce *would have been* affected." United States v. Orisnord, 483 F.3d 1169, 1177 (11th Cir. 2007) citing United States v. Le, 256 F.3d 1229, 1233 (11th Cir. 2001); United States v. Kaplan, 171 F.3d 1351, 1354 (11th Cir. 1999)(holding that "'the government need only show a realistic probability of an effect'" on interstate commerce). Accordingly, the Eleventh Circuit recently held "that the interstate nexus was satisfied when the defendant conspired to rob the stash house of a narcotics organization, even though both the narcotics and the organization were fictional." Orisnord, 483 F.3d at 1177, citing United States v. Taylor, 480 F.3d 1025, 1027 (11th Cir. 2007). As in Orisnord, the interstate commerce nexus was satisfied when the movant conspired to rob cocaine from a narcotics organization. As previously addressed, the Eleventh Circuit determined "there was sufficient evidence that a non-consensual taking was planned and the fact that the drugs and drug courier were fictional is irrelevant, there was sufficient evidence to convict Wright of a Hobbs Act conspiracy to rob." (Cr-DE#205).

Moreover, "a conspiracy to steal cocaine alone suffices to establish a connection to foreign commerce, because, as other circuits have found, 'all cocaine originates overseas.' United States v. Rodriguez, 360 F.3d 949, 956 (9th Cir. 2004) citing United States v. Marrero, 299 F.3d 653, 655 (7th Cir. 2002). Accordingly, counsel was not ineffective for failing to raise this claim. Moreover, if it is found that counsel was deficient for raising the claim, the movant nonetheless has failed to demonstrate any prejudice as a result therefrom.

In **claim seven**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the imposition of a mandatory consecutive sentence of five years based on the "except" clause pursuant to 18 U.S.C. §924(c)(1)(A). (Cv-DE#1:12;Cv-DE#6:11).

In the underlying criminal case, the movant was convicted of two firearm offenses, Counts Four and Five, each of which carry mandatory sentences. A conviction pursuant to Count Four carries with it a mandatory sentence of five years consecutive to any other term of imprisonment. 18 U.S.C. §924(c)(1)(A)(I). Moreover, with respect to Count Five, the minimum mandatory penalty was fifteen years. 18 U.S.C. §924(e). However, according to the movant, counsel failed to argue that the introductory section 924(c) "except" clause meant that the greater minimum mandatory imprisonment time; to wit, the fifteen years imposed pursuant to Count Five, trumped the lesser minimum mandatory of Count Four, in essence arguing that the consecutive five year sentence should be vacated. Notwithstanding the movant's assertions, this claim is without merit.

In relevant part, section 942(c) reads:

> *Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--(i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. §924(c)(1)(A)(emphasis added). Moreover, section 924(c) states that "[n]otwithstanding any other provision of law – no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. §924(c)(1)(D)(ii).

Recently, the Eleventh Circuit, in United States v. Segarra, --- F.3d ---, 2009 WL 2932242 (11th Cir. 2009) was faced with the interpretation of section 924(c)(1)(A)'s "prefatory 'except' clause and the imposition of consecutive terms of imprisonment." (Id.). The appellant in Segarra, as in this case, argued that the "except" clause prohibits consecutive sentences where the underlying offense carried a mandatory minimum that exceed the minimum applicable to the firearm offense. (Id.).

In addressing the issue, the Eleventh Circuit in Segarra held:

> This court has not yet addressed this precise issue. And, although there is a circuit split, only one circuit has followed Segarra's interpretation. In United States v. Williams, the Second Circuit held that it was improper to sentence a defendant for both the §841 mandatory minimum and the §924(c) mandatory minimum under the statute's 'except' clause. 558 F.3d 166 (2d Cir. 2009).[4]  The court reasoned that the 'except' clause should be read literally and the plain language of the statute dictated that the mandatory minimum would not apply to the firearm offense if any other provision of law required a higher mandatory minimum sentence. Williams, 558 F.3d at 169-

---

[4]Although Segarra cites United States v. Whitely, 529 F.3d 150 (2d Cir. 2008), that case is not directly on point, as the defendant in that case was convicted of two firearms offenses. In Williams, the Second Circuit extended Whitely to cases involving drug and firearm convictions which more closely mirrors the facts of the instant appeal.

170.

Every other circuit to address the issue has rejected the Second Circuit's interpretation. See United States v. Easter, 553 F.3d 519 (7th Cir.)(affirming consecutive sentences for convictions under §§841 and 924(c)), petition for cert. Field, Nos. 08-9560, 08-10584 (Mar. 26 and May 20, 2009); United States v. Parker, 549 F.3d 5 (1st Cir. 2008);[5] United States v. Jolivette, 257 F.3d 581 (6th Cir. 2001) (upholding consecutive sentences for armed bank robbery and firearm convictions); United States v. Studifin, 240 F.3d 415 (4th Cir. 2001)(affirming sentences for robbery, §924(c) offenses, and possession of a firearm by a convicted felon); United States v. Alaniz, 235 F.3d 386 (8th Cir. 2000)(affirming consecutive sentences for convictions of §§841 and 924(c)).

Upon review, we join the majority of circuits and hold that the consecutive sentences imposed here are proper. Given the plain language of §924(a), we do not interpret the 'except' clause to limit consecutive sentences imposed for §924(c) offenses and the underlying drug crimes. Rather, the clause is intended to prevent consecutive mandatory minimum sentences for more than one firearm offense. See Easter, 553 F.3d at 525 (concluding it was illogical for the mandatory minimum sentence for a firearm offense to hinge on a mandatory minimum imposed for *any* other offense)(emphasis in original); Alaniz, 235 F.3d at 389 ('In other words, the sentences contained in (c)(1)(A) . . . apply 'except to the extent that a greater minimum sentence is otherwise provided by this subsection . . . .').

This reading of the plain language is consistent with other portions of §924(c), specifically, subsection (c)(1)(D)(ii), which provides that 'no term of imprisonment . . . under this subsection shall run concurrently with any other term of imprisonment imposed . . . .' 18 U.S.C. § 924(c)(1)(d)(ii); see also Easter, 553 F.3d at 526 (explaining that § 924(c) creates a criminal activity rather than defining a sentencing enhancement, and courts must consider the language in §924(c)(1)(D)(ii) that requires consecutive sentences).

---

[5]See also United States v. Pulido, 566 F.3d 52 (1st Cir. 2009) (rejecting Whitely and adhering to Parker).

>To read the statute as the Second Circuit did would
>ignore §924(c)(1)(D)(ii). <u>See</u> <u>Easter</u>, 553 F.3d at 526.
>Accordingly, considering the entire statute in context,
>we conclude the plain language dictates consecutive
>sentences.

<u>Segarra</u>, --- F.3d ---, 2009 WL 2932242. Accordingly, the District Court properly sentenced the movant to a consecutive term of 60 months as to Count Four. Thus, under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim.

In **claim eight**, the movant asserts that his three level aggravating role enhancement for leadership should be vacated following the Eleventh Circuit's reversal of co-defendants, Reed and Forest's convictions. (Cv-DE#1:13;Cv-DE#6:12).

Although the movant is correct that he received an enhancement for his role in the offense, the PSI reflects a two level increase and not a three level increase, as the movant argues. Notwithstanding, the reversal of co-defendants Reed and Forest's convictions are of no import as the movant's final base offense level was not determined by his role or any specific offense characteristic, but rather, by his classification as both a career offender and an armed career offender, thus automatically setting his base offense level at 37. (PSI¶¶24-30). Accordingly, the reversal of co-defendants Reed and Forest's convictions are inconsequential. Thus, this claim is without merit.

<u>Evidentiary Hearing</u>

Finally, the movant's request for an evidentiary hearing on his claims should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported

generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 21st day of September, 2009.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Iramm Wright, <u>Pro Se</u>
     Reg. No. 65210-004
     FCC - Coleman (Medium)
     P.O. Box 1032
     Coleman, FL 33521-1032

     Ann Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

     Eric Morales, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132